# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ANNTWANETTE JONES, and
LUCINDA ALLARD, *et al.*,

          Plaintiffs,

    v.

PHH MORTGAGE CORPORATION
D/B/A PHH MORTGAGE SERVICES,

        Defendant.

No. 1:23-cv-01040

**OPINION**

---

**APPEARANCES**:

Patricia Mulvoy Kipnis
BAILEY & GLASSER LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002

    *On behalf of Plaintiffs.*

Kevin Vincent Small
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on PHH Mortgage Corporation's, d/b/a PHH Mortgage

Services, ("Defendant") Motion to Dismiss (ECF No. 55) the First Amended Complaint filed by

Plaintiffs Anntwanette Jones ("Plaintiff Jones") and Lucinda Allard ("Plaintiff Allard")

(collectively, "Plaintiffs") (ECF No. 54). The Court did not hear oral argument pursuant to Local

Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED IN PART,** and **DENIED IN PART**.

## I.   <u>BACKGROUND</u>

Defendant is one of the country's largest servicers of residential mortgages. (Am. Compl., ECF No. 54 ¶ 1). Defendant enters into service agreements with various parties—lenders, note holders, master-servicers, and trustees—to provide servicing, subservicing, and agency activities for loan portfolios. (Am. Compl., ECF No. 54 ¶¶ 15, 35). Pursuant to these agreements, Defendant acts as "the agent" and "exercises the rights and responsibilities of those lenders, note holders, and master-servicers pursuant to their approval." (Am. Compl., ECF No. 54 ¶ 15). In its capacity as a servicing company, one of Defendant's major responsibilities "is to accept mortgage payments." (Am. Compl., ECF No. 54 ¶ 38).

Defendant permits borrowers to pay their monthly mortgage payments through a variety of methods including through pre-authorized, reoccurring electronic funds transfer ("EFT"), transactions. (Am. Compl., ECF No. 54 ¶ 1). However, if a borrower elects to "remit the same payment on a monthly basis instead" the transaction is accompanied by "'convenience fees' or 'processing fees' (collectively, 'Pay-to-Pay Fees') of up to $19.50 . . . ." (Am. Compl., ECF No. 54 ¶ 1). Some borrowers elect to submit their mortgage payments via a one-time EFT transaction instead of "paying by check or a preauthorized, reoccurring EFT" because (i) it provides them with greater "control and protection," or (ii) they have a "tighter budget[]" and the one-time EFT option allows them "to avoid adverse credit reporting, overdraft charges, late fees, or other financial consequences." (Am. Compl., ECF No. 54 ¶¶ 5, 7). Defendant's Pay-to-Pay Fee is "highly unusual for the industry," and "materially higher" than the costs it incurs. (Am. Compl., ECF No. 54 ¶¶ 46, 49). A single loan subject to the Pay-to-Pay Fees can result in a borrower

paying "hundreds of dollars" in these fees, and Defendant reaping "millions of dollars in profits." (Am. Compl., ECF No. 54 ¶ 46).

On or around June 29, 2021, Plaintiff Jones obtained a Federal Housing Administration ("FHA") mortgage loan ("Jones Mortgage") secured by her home in Amherst, New York. (Am. Compl., ECF No. 54 ¶¶ 12, 74). The FHA "insures loans for lower income borrowers." (Am. Compl., ECF No. 54 ¶ 3). In exchange for the government insurance, "loan servicers must agree to adhere to the FHA's regulatory scheme, which does not permit arbitrary and unreasonable costs [to] be imposed on borrowers." (Am. Compl., ECF No. 54 ¶¶ 3, 27, 34). Defendant was not a party to the mortgage. (Mot. to Dismiss, ECF No. 55-1 at 3). Plaintiff Jones also executed a promissory note ("Jones Note") in which she committed to "make all payments under [the note] in the form of cash, check or money order." (Am. Compl., ECF No. 54 ¶ 74; Small Decl., ECF No. 55-3 at 1). The Jones Note sets forth the acceptable payment methods but does not include the option to submit one-time online EFT payments or mention the Pay-to-Pay Fees. (Am. Compl., ECF No. 54 ¶ 74; Small Decl., ECF No. 55-3 at 1).

At some point, Plaintiff Jones' lender and/or master servicer assigned Defendant servicing rights under her Standard Mortgage Agreement which, as stated above, does not expressly authorize Pay-to-Pay Fees. (Am. Compl., ECF No. 54 ¶¶ 74, 76, 77). Plaintiff Jones submitted her monthly mortgage payments by standard EFT, either over the phone or online, and incurred a Pay-to-Pay Fee on each transaction. (Am. Compl., ECF No. 54 ¶ 78). For example, on July 12, 2022, Defendant collected a $7.50 Pay-to-Pay Fee for a standard EFT payment. (Am. Compl., ECF No. 54 ¶ 78). And collected the same fee on November 9, 2022 for another transaction. (Am. Compl., ECF No. 54 ¶ 78).

On or around October 4, 2005, Plaintiff Allard obtained a mortgage loan ("Allard Mortgage") secured by her home in Chatham, Illinois. (Am. Compl., ECF No. 54 ¶ 80). Defendant was not a party to the mortgage. (Mot. to Dismiss, ECF No. 55-1 at 3). Plaintiff Allard also executed a promissory note ("Allard Note") in which she committed to "make all payments under this Note in the form of cash, check or money order." (Am. Compl., ECF No. 54 ¶ 80; Small Decl., ECF No. 55-4 at 1). The Allard Note does not include the option to submit one-time online EFT payments. (Am. Compl., ECF No. 54 ¶ 80; Small Decl., ECF No. 55-4 at 1). At some point, her lender and/or master servicer "assigned Ocwen servicing rights under the mortgage agreement, and PHH acquired those rights as successor in interest when the two entities merged." (Am. Compl., ECF No. 54 ¶ 82).

Plaintiff Allard fell behind in her mortgage payments, and her loan went into default. (Am. Compl., ECF No. 54 ¶ 82). Defendant's records reflect that Plaintiff Allard's loan was acquired while it was still in default. (Am. Compl., ECF No. 54 ¶ 82). Over the course of the loan, Plaintiff Allard submitted her monthly payments by standard EFT online and incurred a Pay-to-Pay Fee on each transaction. (Am. Compl., ECF No. 54 ¶ 85). For example, on November 22, 2022, Defendant collected a $7.50 Pay-to-Pay Fee from Plaintiff Allard for her standard EFT payment. (Am. Compl., ECF No. 54 ¶ 85).

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on February 22, 2023. (ECF No. 1). On May 8, 2023, Defendant filed a Motion to Dismiss. (ECF No. 39). Plaintiffs filed an Opposition (ECF No. 44), to which Defendant replied. (ECF No. 45). On November 17, 2023, Plaintiffs submitted an unopposed Motion to Amend the Complaint. (ECF No. 46). The Court granted the motion (ECF No. 49), and administratively terminated the then pending Motion to Dismiss (ECF No. 50).

Plaintiffs filed an Amended Complaint on November 28, 2023. (ECF No. 54). Plaintiffs' Amended Complaint alleges the following claims related to the Pay-to-Pay Fees charged by Defendant: (i) breach of contract (Count I), (ii) violation of the implied covenant of good faith and fair dealing (Count II), (iii) violations of New York General Business Law § 349 ("GBL § 349") (Count III), (iv) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/1 *et seq*. (Count IV), (v) unjust enrichment (Count V), and (vi) violations of Section 1692 of the Fair Debt Collection Practices Act ("FDCPA") (Count VI). (Am. Compl., ECF No. 54 at 39–54).

On December 15, 2023, Defendant filed the instant Motion to Dismiss. (ECF No. 55). Plaintiffs filed an opposition (ECF No. 56), and Defendant replied (ECF No. 57).

## III.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

To state a claim, a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which is rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quotations, alterations, and citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' require more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and

view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)). Next, the court should identify and disregard the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "If on a 12(b)(6) motion to dismiss, a party 'presents matters outside the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment and give all parties a reasonable opportunity to present all material pertinent to such motion under Rule 56.'" *Jones v. Morris Cnty. Corr. Facility*, No. 06-2461, 2007 WL 1118342, at *2 (D.N.J. Apr. 13, 2007) (citing *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002)). However, a district court is not required to convert a motion to dismiss into a motion for summary judgment when it considers the following types of documents: "(1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public

record; [or] (4) matters integral to or upon which plaintiff's claim is based." *Id.* (citing *In re Bayside*, 190 F. Supp. 2d at 760).

## IV.   DISCUSSION

### A.   Plaintiffs Sufficiently State Allegations to Withstand Defendant's Assertion of The Voluntary Payment Doctrine Defense at this Stage

Defendant contends that Plaintiffs' state-law claims[1] in Counts I to V are barred by the voluntary payment doctrine due to their decision to use an alternative payment method, other than what was delineated in their respective mortgage notes, in exchange for a fee. (Mot. to Dismiss, ECF No. 55-1 at 6–7). Plaintiffs counter that Defendant has prematurely raised the voluntary payment doctrine as it is an affirmative defense, and further argue that the affirmative defense is inapplicable unless Defendant "shows that Plaintiffs' payments were entirely voluntary" and in essence made "with full knowledge of the facts and a realistic ability to avoid paying." (Pl. Opp., ECF No. 56 at 28).

Under New York law, the voluntary payment doctrine is a common law doctrine that "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillion v. U-A Columbia Cablevision of Westchester,*

---

[1] This action was commenced in the District of New Jersey because Defendant "is incorporated in and has its principal place of business in the State of New Jersey and is thus a citizen of the State of New Jersey." (Am. Compl., ECF No. 54 ¶¶ 10, 14). New York law applies to Plaintiff Jones' Count I (Breach of Contract), Count II (Violation of the Implied Covenant of Good Faith and Fair Dealing), Count III (Violation of GBL § 349), and Count V (Unjust Enrichment) claims. *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010) ("In making a choice-of-law determination in a breach-of-contract case, New Jersey courts ask which forum has the most significant relationship with the parties and the contract."); *Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, No. 07-4925, 2008 WL 4056244, at *11 (D.N.J. Aug. 26, 2008) ("New Jersey choice of law rules require that the Court apply the laws of the class members' home states."). As to Plaintiff Allard, Illinois law applies to Count IV (Violation of ICFA), and Count V (Unjust Enrichment). *Advanced Acupuncture Clinic, Inc.*, 2008 WL 4056244 at *11.

*Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003). The doctrine may be used to bar "both statutory claims under GBL § 349 and common law claims." *Shelton v. CIOX Health, LLC*, No. 17-00808, 2018 WL 4211447, at *2 (E.D.N.Y. July 20, 2018). It is an affirmative defense for which defendant bears the burden of proof. *Brignoli v. Balch, Hardy & Scheinman*, 178 A.D.2d 290, 290 (N.Y. App. Div. 1991); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-03556, 2019 WL 1244293, at *4 (S.D.N.Y. Mar. 15, 2019) ("The voluntary payment doctrine is generally considered to be an affirmative defense, and a plaintiff is 'not required to preemptively plead facts refuting' such a defense.") (internal citations omitted).

Under Illinois law, the voluntary payment doctrine provides that "money voluntarily paid under a claim of right by one who has knowledge of the relevant facts cannot be recovered by the payor on the ground that the claim was illegal." *Halstead Terrace Nursing Ctr., Inc. v. Scottsdale Ins. Co.*, No. 96-5902, 1997 WL 124263, at *3 (N.D. Ill. Mar. 17, 1997) (quoting *Kanter & Eisenberg v. Madison Assocs.*, 508 N.E.2d 1053, 1055 (Ill. 1987)); *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155,1171 (Ill. 2005) ("[I]n the absence of fraud, misrepresentation, or mistake of fact, money voluntarily paid under a claim of right to the payment, with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion.") (quoting *Illinois Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1295 (1994)). The doctrine "is an affirmative defense, and a complaint or a counterclaim does not have to 'plead around' an affirmative defense to survive a motion to dismiss." *Pittsfield Dev., LLC. v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 799 (N.D. Ill. 2021); *State Mech. Servs., LLC v. NES Equip. Servs. Corp.*, No. 17-5950, 2018 WL 2193248, at * 3 (N.D. Ill. May 14, 2018). There are two exceptions to this doctrine: (i) if there is fraud, misrepresentation, or mistake of fact; or (2) if the payment was not voluntary (i.e., circumstances amounting to compulsion). *Comm'l*

*Nat'l Bank v. Bruno*, 389 N.E.2d 163, 167 (Ill. 1979); *Walker v. Chasteen*, 183 N.E.3d 153, 160 (Ill. 2021); *Kane-Miller Corp. v. Lakeview Trust & Sav. Bank*, No. 88 C 7561, 1998 WL 13295, at *2 (N.D. Ill. Feb. 13, 1989) (the voluntary payment doctrine is "inapplicable when the payor is not aware of all the facts.").

First, although Plaintiffs attempt to argue that Defendant has failed to show the absence of duress or coercion, the allegations of the Amended Complaint show otherwise. (Pl. Opp., ECF No. 56 at 29–30). Defendant aptly highlights that Plaintiff Jones' and Plaintiff Allard's mortgage payments are governed by their mortgage notes which both indicate that Plaintiffs may submit their monthly payments by "cash, check or money order." (Am. Compl., ECF No. 54 ¶ 74; Motion to Dismiss, ECF No. 55-1 at 7; Small Dec., ECF No. 55-3[2] at 1; ECF No. 55-4[3] at 1). In fact,

---

[2] Although Plaintiffs state in paragraph 74 that the Jones Mortgage and Jones Note are attached as Exhibit A to the Amended Complaint, it appears they were inadvertently omitted from the filing. (*See generally* ECF No. 54). Defendant's Motion was filed with a declaration which was accompanied by the Jones Note, but not the Jones Mortgage. (ECF No. 55-3). Plaintiffs make clear in their Amended Complaint that they intended to attach the Jones Note. (ECF No. 54 ¶ 74). Further, the Jones Notes is integral to Plaintiff Jones' claims. And notably neither of the parties have requested that the motion to dismiss be converted into a motion for summary judgment based on Defendant's submission of the Jones Note as an exhibit. Thus, the Court will not convert Defendant's Motion into a motion for summary judgment. *Horne v. Crisostomo*, No. 06-3430, 2007 WL 2123701, at *3 (D.N.J. July 19, 2007) (declining to convert defendants' 12(b)(6) motion into one for summary judgment as the documents at issue were either matters of public record or specifically referenced in the complaint).

[3] While Plaintiffs refer to the Allard Note in paragraph 80 of the Amended Complaint, the note is not attached as an exhibit. (ECF No. 54-1 ¶ 80). Unlike the Jones Note, Plaintiffs' Amended Complaint does not purport to attach the Allard Note as an exhibit. Defendant included a copy of the Allard Note as an exhibit to its Motion. (ECF No. 55-4). Although, the Allard Note was not attached to the Amended Complaint, the note concerns a matter which is integral to the Amended Complaint (i.e., Plaintiff Allard's obligation to repay the Allard Mortgage, and the manner in which she was permitted to do so). For the same reasons as set forth in footnote 2, *supra*, the Court will not convert Defendant's Motion into a motion for summary judgment. *Horne*, 2007 WL 2123701 at *3.

neither Jones' Note nor Allard's *require* that they submit their payment through an EFT transaction. (Small Dec., ECF No.55-3 at 1; ECF No. 55-4 at 1).

Plaintiffs admit that they were aware of the alternative options to submit their payments, which were not accompanied by Pay-to-Pay Fees (e.g., payment by mail) but found those methods to be impractical.[4] (Am. Compl., ECF No. 54 ¶¶ 43–44, 171). While Plaintiffs' Opposition elaborates on the perceived risks of using the postal system[5] to submit their mortgage payments, such allegations are absent from the Amended Complaint. And to survive a motion to dismiss, the "*complaint* must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (emphasis added) (citations and quotation marks omitted). Thus, Plaintiffs cannot use their opposition to supplement their complaint.

Plaintiffs do allege in their Amended Complaint that Defendant "imposes charges on the standard EFT payments because it has figured out that the borrowers most likely to elect that option tend to be borrowers who live on tighter budgets and are least able to absorb this added cost, but do so to avoid adverse credit reporting, overdraft charges, late fees or other financial consequences." (Am. Compl., ECF No. 54 ¶ 7). But this allegation does not support finding that

---

[4] Interestingly, Plaintiffs ignore the fact that under their original notes, the only payment options available were payment by cash, check, or money order. (Am. Compl., ECF No. 54 ¶¶ 74, 80; Small Decl., ECF No. 55-3 at 1; Small Decl., ECF No. 55-4 at 1). And yet they argue that payment by check via postal service is now "impractical." (Am. Compl., ECF No. 54 ¶¶ 43–44, 171). If Defendant had not become the servicer of Plaintiffs' respective mortgages, Plaintiffs would still be bound by the original forms of payment offered under the original note, one of which they now claim is "impractical."

[5] "Should Plaintiffs have paid by mail, they would have risked the consequences of delays or losses resulting from the postal system, such as lost or delayed delivery, bounced checks, and stolen deliveries." (Pl. Opp., ECF No. 56 at 30).

Defendant compelled or coerced Plaintiffs. Instead, it implies that Defendant imposed the Pay-to-Pay Fee on EFT transactions because it anticipates the individuals that typically use this feature are those who "live on a tighter budget[]" and while unable to afford the Pay-to-Pay Fee, absorb it to avoid negative financial consequences. (Am. Compl., ECF No. 54 ¶ 7).

More importantly, Plaintiffs' allegations as to why they selected to submit their payments through the one-time EFT option shows that their actions were based on convenience, and not coercion, compulsion, or duress. (Am. Compl., ECF No. 54 ¶¶ 43–44, 171; Pl. Opp., ECF No. 56 at 30). For example, Plaintiff Jones made "her [mortgage] payments via standard EFT placed over the phone or internet *every month since origination . . . .*" (Am. Compl., ECF No. 54 ¶ 78). The allegation shows that Plaintiff Jones habitually submitted her payments using the one-time EFT option, which was accompanied by the Pay-to-Pay Fee, and not that she used it once or twice in a moment of crisis. Further, Plaintiffs' Amended Complaint does not contain a single factual allegation that Defendant threatened to report them to credit agencies or cause any similar negative financial harm. While most of the cases Plaintiffs cite are in the same procedural posture of this case (i.e., a motion to dismiss), they are distinguishable. For example, in *Rocky Knoll Estates. MHC, LLC v. C W Capital Asset Management, LLC* defendants explicitly threatened to cause plaintiff financial harm if they did not repay their debt. No. 14-06097, 2015 WL 1632637, at *2 (W.D.N.Y. Apr. 13, 2015) (noting defendants' counsel drafted four short letters, seeking "under duress, collusion and coercion, to recover, and did recover, in excess of [$75,000] from [p]laintiffs"). And in *Corona v. PNC Financial Services Group, Inc.*, plaintiff was "'forced to use the Speedpay service' because she paid her mortgage 'during the grace period and would have suffered more significant consequences if her payment did not arrive'" in time. No. 20-06521, 2021 WL 1218258, at *1, *3 (C.D. Cal. Mar. 16, 2021). Unlike these cases, Plaintiffs' Amended

Complaint does not contain similar allegations rather it identifies the reason for using Defendant's one-time EFT option was because the alternative options were "impractical." (Am. Compl., ECF No. 54 ¶¶ 43–44, 171).

Even a liberal construction of Plaintiffs' Amended Complaint does not reveal a factual allegation, or reasonable inference therefrom, that would support a finding of duress or coercion by Defendant. Thus, Plaintiffs' argument that Defendant has not shown the absence of duress or coercion fails. *Shelton*, 2018 WL 4211447 at *2 ("To find that a payment was made under duress, the payment must have been motivated by some actual or threatened exercise of power possessed by defendants such that the plaintiff is forced to choose the lessor of two evils.") (internal citations and quotation marks omitted); *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1330, 1334 (Ill. App. Ct. 1995) (granting motion to dismiss all counts of plaintiff's complaint seeking recovery of their payment as plaintiff failed to plead facts indicating compulsion).

Next, Plaintiffs argue the voluntary payment doctrine does not bar their claims because their Pay-to-Pay Fee payments were made without full knowledge of the facts. (Pl. Opp., ECF No. 56 at 34). The Court finds this argument persuasive at this procedural stage, particularly because Defendant has the burden of proof as to this affirmative defense. The allegations of Plaintiffs' Amended Complaint do not affirmatively demonstrate that at the time of the payments they were aware that (i) each Pay-to-Pay fee "grossly exceeded [Defendant's] cost of accepting the EFT payment;" (ii) the fees were "neither reasonably related to [Defendant's] costs of providing the service;" or (iii) the fees were not "customary in the industry." (Am. Compl., ECF No. 54 at ¶¶ 79, 86). Without the inclusion of these allegations, Defendant cannot meet the burden of proof for their voluntary payment defense at this point. Further, the absence of these factual allegations are indeed sufficient to support Plaintiffs' assertions that (i) there was a "lack of full disclosure by

defendant" and (ii) Plaintiffs did not have "full knowledge of the facts" when submitting their mortgage payments via EFT. *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 275–76 (S.D.N.Y 2014) (denying motion to dismiss violation of GBL § 349 claim, and holding that the voluntary payment doctrine was inapplicable as plaintiffs lacked full knowledge of the facts regarding the copying costs as they were not advised that defendants were charging more than the costs incurred for copying the records); *Charles v. Color Factory, LLC*, No. 24-322, 2024 WL 1693236, at *4 (S.D.N.Y. Apr. 19, 2024) (denying motion to dismiss and finding the voluntary payment doctrine inapplicable as the complaint adequately alleged a lack of full disclosure); *Wermers Floorcovering, Inc. v. Santanna Nat. Gas Corp.*, 794 N.E.2d 1012, 1014 (Ill. App. July 30, 2003) (explaining a payment is involuntary if "the payor lacked knowledge of the facts upon which to protest the payment at the time of the payment.").

Accordingly, given the allegations of the Amended Complaint, which must be taken as true at this stage, it would be premature to determine whether the voluntary payment doctrine defeats Plaintiffs' state-law claims. Thus, Defendant's Motion to Dismiss Plaintiffs' state-law claims pursuant to the voluntary payment doctrine is denied.

### B.  Plaintiff Jones Fails to State a Claim for Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must demonstrate: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (*citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). It is well-established that "a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991). However, in some instances where the parties have not entered into a contract with each

other, "New York law does allow privity to be imputed to an *agent* of the contracting party under certain narrow circumstances." *Kapsis v. AM. Home Mortg. Serv., Inc.,* 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) (emphasis added).

Defendant asserts that Plaintiff Jones has failed to state a claim for breach of contract as (i) she and Defendant have not entered into a contract with each other, and (ii) she fails to allege any cognizable breach. (Mot. to Dismiss, ECF No. 55-1 at 13). As an initial matter, the Amended Complaint does not plead the existence of a contract between Plaintiff Jones and Defendant. Instead, Plaintiff Jones' breach of contract claim is based on the allegation that Defendant is in some form of privity with her by way of its servicing her mortgage loan. (Am. Compl., ECF No. 54 ¶ 116). Plaintiff Jones sets forth two theories to support her claim that privity exists:

- *The Assignment Theory* - Privity of contract exists because Defendant "purchased the servicing rights and/or took assignment of those servicing obligations under the mortgage or deed of trust agreements . . . ."

- *The Agent Theory* - Defendant is in "functional privity or near privity of contract" where Defendant "services the loans as an agent for the lender/master servicer or [Government-Sponsored Enterprise] . . . as a result of its fulfillment of its principals' duties and obligations" deriving from the applicable loan agreements.

(Am. Compl., ECF No. 54 ¶ 116).

Defendant relies on *MSP Recovery Claims, Series LLC v. American Family Connect Prop. & Cas. Ins. Co.* to support its position that Plaintiff Jones has failed to allege facts to support her Assignment Theory. (Mot. to Dismiss, ECF No. 55-1 at 15 (citing No. 23-20132, 2023 WL 3276792, at *2 (S.D. Fla. May 5, 2023))). However, the facts in *MSP Recovery* are not analogous to the facts at hand, and thus the Court does not find the case persuasive. Specifically, in *MSP*

*Recovery*, plaintiff failed to the identify the organization "whose reimbursement rights it claims to own or the essential terms of the assignment." *Id.* at *2. Further, plaintiff failed to allege "that the unnamed [organization] assigned it the specific claim" at issue. *Id.* In comparison, here Plaintiff expressly alleges that Defendant "purchased the servicing rights and/or took assignment of those servicing obligations under the mortgage or deed of trust agreements. . ." (Am. Compl., ECF No. 54 ¶ 116). Plaintiff Jones also specifically alleges that her lender and/or master servicer assigned Defendant "servicing rights under her Standard Mortgage Agreement." (Am. Compl., ECF No. 54 ¶ 76). Unlike in *MSP Recovery*, Plaintiff Jones' allegations in the Amended Complaint identify the assignee, assignor, and, albeit generally, the terms of the agreement.

Defendant's more compelling argument is that Plaintiff Jones' allegations as to her Assignment Theory are conclusory. Plaintiff Jones alleges that her "Lender and/or master servicer assigned PHH servicing rights under her Standard Mortgage Agreement" but provides no factual allegations to support this allegation. (Am. Compl., ECF No. 54 ¶ 76). For example, the complaint is silent as to what mechanism was used to make the assignment, and what, if any, form of recourse Defendant could take if Plaintiff Jones failed to fulfill her obligations under the terms of the purported assignment. Thus, while the Amended Complaint contains allegations that an assignment was made, they are all conclusory, and insufficient to support her Assignment Theory. *Twombly*, 550 U.S. at 555 (a plaintiff cannot rely on mere "labels and conclusions" to support a claim); *Nelson v. Park City 3&4 Apartments Inc.*, No. 16-3533, 2021 WL 5304052, at *2 (E.D.N.Y. Nov. 15, 2021) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to survive a motion to dismiss.).

As to Plaintiff's Agent Theory, there are a few cases which hold that nonsignatories may be found to be in privity of contract, but these cases are outliers. *See Harte v. Ocwen Fin. Corp.*,

No. 13-5410, 2014 WL 4677120, at *6–7 (E.D.N.Y. Sept. 19, 2014); *Kapsis,* 923 F. Supp. 2d at 451–52 ("The determination of whether the 'functional equivalent of privity' exists . . . is a highly fact-dependent endeavor which must consider the de facto dealings between the relevant parties as well as the language of all relevant contracts.") (internal quotation marks omitted). Rather, the majority of courts have held that loan or mortgage servicers are not in privity of contract with the borrower, and cases decided subsequent to *Kapsis* continue to hold that nonsignatories may not be found to be in privity of contract with a borrower. *Silvester v. Selene Fin., LP,* No. 18-02425, 2021 WL 861080, at *8 (S.D.N.Y. Mar. 8, 2021) (granting motion to dismiss because "[d]efendant was not a party to the Mortgage, and simply acting as the loan servicer is insufficient to create a privity of contract between the parties.") (citing *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-2672, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012)); *Edwards v. Ocwen Loan Servicing, LLC,* 24 F. Supp. 3d 21, 28 (D.D.C. 2014) (granting motion to dismiss, in part, and dismissing breach of contract and breach of implied covenant of good faith and fair dealing claims) (collecting cases).

For these reasons, Plaintiff Jones' Agent Theory also fails as she has not adequately alleged that Defendant is in functional privity or near privity of contract with her. Thus, Defendant's Motion to Dismiss as to Plaintiff Jones' breach of contract claim (Count I) must be granted and this claim is dismissed without prejudice.

### C. Plaintiff Jones Fails to State a Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted). The covenant may "only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive

provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005) (citation omitted). Thus, a contract must exist between the parties for a viable claim. *See Frutico S.A. de C.V. v. Bankers Trust Co.*, 833 F. Supp. 288, 300 (S.D.N.Y 1993) ("[W]hen no agreement exists, either in principle or in fact, there is no duty to negotiate in good faith that can be enforced against a party to the negotiations.").

As the Court has found that the parties were not in privity of contract, Defendant's Motion to Dismiss as to Plaintiff's breach of good faith and fair dealing claim (Count II) must be granted and will be dismissed without prejudice.

### D.  Plaintiff Jones Sufficiently States a Claim for Violation of NY GBL § 349

To state a claim pursuant to New York General Business Law ("GBL") § 349, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 63, 74 (2d Cir. 2009). Whether an act or practice is deceptive or misleading is viewed under an objective standard which requires that the representations or omissions are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Ostrander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks and citations omitted).

To succeed on the second element under GBL § 349, "the allegedly deceptive acts, representations or omissions must be misleading to a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of New York,* 774 N.E.2d 1190, 1195 (N.Y. 2002) (internal citations and quotation marks omitted). "Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank,* 731 N.E.2d 608, 611 (N.Y. 2000) (internal citation and quotation marks omitted). "This is an 'objective test' that may be determined as a matter of law or fact (as individual cases require)."

*Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (quoting *Koening v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014)).

In Count III of her Amended Complaint, Plaintiff asserts that "Defendant's misrepresentation and omissions regarding its legal authority to collect Pay-to-Pay Fees" was violative of GBL § 349 as it (i) runs afoul of 3 N.Y.C.R.R. § 419.5(b) which "prohibits mortgage servicers from collecting fees for services when those fees are not 'reasonably related to the cost of rendering that service;'" and (ii) "the Approved Fee Regulation at 24 C.F.R. § 203.552, requires that [Defendant] as a 'mortgagee' refrain from collecting fees not authorized by the Secretary of [the United States of Housing and Urban Development ("HUD")] and collect only those fees specifically approved by the Secretary of HUD." (ECF No. 54 ¶¶ 154–56).

Defendant moves to dismiss Plaintiff Jones' claim on the grounds that (i) she cannot base her claim on regulations that lack a private right of action, and (ii) "failing to disclose an alleged violation is not 'deception' for purposes of GBL § 349." (Mot. to Dismiss, ECF No. 55-1 at 29–31). Plaintiffs counter that "[Plaintiff] Jones' theory is only *informed*" by 3 N.Y.C.R.R. § 419.5(b) and at 24 C.F.R. § 203.552. (Pl. Opp., ECF No. 56 at 24) (emphasis in original). And her GBL § 349 claim is in fact a standalone claim based on the allegation that Defendant's omission as to its lack of legal authority to collect the Pay-to-Pay Fees was deceptive and misled reasonable consumers. (Am. Compl., ECF No. 54 ¶¶ 157–59; Pl. Opp., ECF No. 56 at 25).

In *Conboy v. AT&T Corp.*, the Second Circuit held that a plaintiff cannot circumvent a lack of a private right of action for violation of a New York law by pleading their claim under GBL § 349. 241 F.3d 242, 258 (2d Cir. 2001). However, a plaintiff may plead a violation of GBL § 349 as the statute itself provides a party with a private right of action. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 127 (2d Cir. 2017) (A GBL claim is viable where the

plaintiff argues defendant violated the regulation even if the argument invokes a violation under another statute which does not provide for a private cause of action. However, a plaintiff cannot use the violation of a non-actionable statute, where there is no allegation of an "act or practice [that] was misleading in a material respect," to support a claim for a violation under GBL § 349 as this regulation requires an allegation of deceptive behavior.); *Harris v. Dutchess Cty. Bd. of Co-op Educ. Servs.*, 50 Misc. 3d 750, 764 (N.Y. Sup. Ct. Nov. 4, 2015); *Schlessinger v. Valspar Corp.*, 817 F. Supp.2d 100, 104 (E.D.N.Y. 2011).

While Plaintiff references N.Y.C.R.R. § 419.5(b) and 24 C.F.R. § 203.552 in her discussion regarding GBL § 349, she does not rely on these statutes alone to support her claim that Defendant violated GBL § 349. (Am. Compl., ECF No. 54 ¶¶ 156–60). The deceptive act for which Plaintiff bases her claim is not the actual violation of the New York regulations but the alleged misrepresentation to consumers that Defendants were legally permitted to collect the Pay-to-Pay Fees. (Am. Compl., ECF No. 54 ¶¶ 156–61).

Defendant's argument that failure to disclose is not deception for purposes of GBL § 349 overlooks Plaintiff Jones' allegations regarding Defendant's decision to overcharge for its services, and its "misrepresentations and omissions regarding its legal authority to collect Pay-to-Pay Fees. . . ." (Mot. to Dismiss, ECF No. 55-1 at 29–31; Am. Compl., ECF No. 54 ¶¶ 155, 157). Plaintiff Jones alleges that Defendant's deceptive actions included not only the failure to disclose the alleged illegitimacy of its Pay-to-Pay Fees but also that Defendant's fees "were not reasonably related to the cost of accepting and processing EFT transactions," and in charging said fees it misrepresented and omitted its authority to do so. (Am. Compl., ECF No. 54 ¶¶ 155, 157). At the pleading stage, the Court finds that these allegations, in addition to the alleged failure to disclose,

19

are sufficient to satisfy the "allegedly deceptive acts, representations or omissions" element under GBL § 349." *Goshen,* 774 N.E.2d at 1195.

Thus, Plaintiff Jones sufficiently states a claim for violation of NY GBL § 349, and Defendant's Motion to Dismiss Count III is denied.

### E. Plaintiff Allard Fails to State a Claim for Violation of Illinois Consumer Fraud and Deceptive Business Practices Act

Plaintiff Allard alleges that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by way of its "unfair practices [which] are substantially injurious to consumers, who were and are forced to pay a 'processing' or 'convenience' fee each time they make a payment by phone or online." (Am. Compl., ECF No. 54 ¶¶ 164, 172). Defendant argues that Plaintiff's ICFA claim fails because its convenience fees cannot be deemed "unfair" as they are associated with an optional service. (Mot. to Dismiss, ECF No. 55-1 at 32). Further, Defendant argues that the fees do not "'offend[] public policy,' are not 'immoral, unethical, oppressive, or unscrupulous,' and cannot cause 'substantial injury to consumers.'" (Mot. to Dismiss, ECF No. 55-1 at 32–33).

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013). To state an ICFA claim, a party must allege: "(1) a deceptive act or practice by the defendant, (2) in the course of conduct involving trade and commerce, (3) the defendant's intent that plaintiff rely on the deception, and (4) actual damage to plaintiff (5) proximately caused by the deception." *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003). A plaintiff may allege that conduct is unfair under the ICFA without alleging that the conduct was deceptive. *Saunders v. Michigan Avenue Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996). Because Plaintiff Allard's

claim relies on ICFA's unfairness prong, and not its deception prong, the claim "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). To determine whether a business practice is unfair, the court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). The Illinois Supreme Court has held that "[t]here is no precise definition" of public policy but it is said "to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981); *Harvey v. Chicago Transit Auth.*, No. 1-20-0973, 2022 WL 1449205, at *5 (Ill. App. Ct. May 9, 2022).

It is not necessary to satisfy all three items to support a finding of unfairness. A practice may be considered unfair (i) due to the level of severity if it meets only one of the criteria or (ii) if it meets all three items of the criteria to a lesser degree. *Id.* To show that Defendant's conduct caused a substantial injury to consumers a plaintiff must allege "that the injury was (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Tyler v. Bank of New York Mellon*, No. 19-7863, 2020 WL 2735367, at *10 (N.D. Ill. May 26, 2020) (citing *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014)).

As to the public policy element, Plaintiff alleges that the "State of Illinois's actions in various contexts demonstrate that Pay-to-Pay Fees offend established public policy." (Am. Compl., ECF No. 54 ¶ 168). As an example, Plaintiff cites (i) the Collection Agency Act, 225 Ill. Comp. Stat. 425, which "authoriz[es] disciplinary proceedings against a 'collection agency' for

'collecting or attempting to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is expressly authorized by law . . . ." (Am. Compl., ECF No. 54 ¶ 168). Further, Plaintiff also notes that Illinois has enacted statutory rules, such as 720 Ill. Comp. Stat. 5/17-5(c), which prohibit "the imposition of processing or service fees not authorized by law or the agreement during the collection of consumer debts." (Am. Compl., ECF No. 54 ¶ 168). Plaintiff thus argues that she has sufficiently shown a general public policy against such fees and contends her allegations are sufficient to support an ICFA violation. (Pl. Opp., ECF No. 56 at 21) (citing *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002 (7th Cir. 2018)); *Leszanczuk v. Carrington Mortg. Servs.*, 21 F.4th 933, 940 (7th Cir. 2021) ("A practice offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise, i.e., if it is within at least the penumbra of some common-law, statutory or other established concept of unfairness.") (internal citations omitted). However, Plaintiff neither cites nor identifies a recognized source of public policy, such as an Illinois Constitution Amendment, statute, or judicial decision, to support her contention that the Pay-to-Play fees charged by Defendant in this context, specifically with respect to mortgage payments, violates public policy so as to state a claim under the ICFA. Indeed, Plaintiff fails to identify any law, regulation, or judicial decision in Illinois in this regard. *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981); *Ciszewski v. Denny's Corp.*, No. 09-5355, 2010 WL 2220584, at *3 (N.D. Ill. June 2, 2010) ("The fact that the legislature has chosen not to adopt legislation that would require" disclosure of certain information supported defendant's "contention that its practice [did] not offend public policy."). And Plaintiff's reliance on general actions taken by the Illinois Attorney General and/or other statutes addressing fees arising in dissimilar contexts from the case at bar is insufficient.

Plaintiff Allard further pleads that as to the "immoral, unethical, oppressive, or unscrupulous" nature of the acts, Defendant's Pay-to-Pay Fees "are grossly excessive not only as compared to its out-of-pocket costs but as compared to what other servicers charge (most of whom offer the service for free), exploiting the fact that borrowers are forced to use [Defendant]." (Am. Compl., ECF No. 54 ¶¶ 49–50; Pl. Opp., ECF No. 56 at 21). And as to the injurious element, Plaintiff Allard alleges Defendant "exploits consumers' financial vulnerabilities, while getting paid twice for loan servicing, once from the lender and once from the consumer." (Pl. Opp., ECF No. 56 at 23). These arguments are not persuasive considering the alternative payment methods available to Plaintiff Allard (i.e., she may submit her monthly payments by check) (Small Dec., ECF No. 55-4 at 1). The cases in which courts have found that a plaintiff sufficiently alleged a substantial injury involved allegations of the inability to save one's home, damage to credit reports, and similar negative financial circumstances. *See, e.g., Wigod v. Wells Fargo*, 673 F.3d 547, 575–76 (7th Cir. 2012) (reversing dismissal of plaintiff's ICFA claim because complaint sufficiently stated a pecuniary injury under ICFA by alleging she "incurred costs and fees, lost other opportunities to save her home," and "suffered a negative impact to her credit," along with other things.); *see, e.g., Boyd*, 787 F. Supp. 2d at 754 (allegations of damage to credit and "the inability 'to fairly negotiate a plan to stay in [his] home'" are sufficient to plead economic damages under ICFA). In instances where the injury was unspecified and more amorphous, courts found plaintiff's allegations of a substantial injury to be insufficient. *Mirabile v. Bank of Am. Nat'l Ass'n*, No. 23-1719, 2024 WL 1250265, at *9 (N.D. Ill. Mar. 22, 2024) (finding factual allegations involving unspecified fees and paperwork delays to be "too weak to infer a substantial injury to consumers," and granting motion to dismiss as to plaintiff's ICFA claim due to the "absence of a public policy

violation or oppression"). Plaintiff Allard's allegations are insufficient to find the injury she alleges was substantial.

For all these reasons, Plaintiff fails to allege facts sufficient to demonstrate that the Pay-to-Pay Fee practice is unfair, and state a claim under the ICFA. Therefore, Defendant's Motion to Dismiss Plaintiff Allard's ICFA claim (Count IV) must be granted and this claim is dismissed without prejudice.

### F. Plaintiffs Jones and Allard Fail to State a Claim for Unjust Enrichment

#### i. Plaintiff Jones

New York law allows for free-standing unjust enrichment claims. *See Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018). To state a claim for unjust enrichment, a plaintiff must allege: "(1) that the defendant benefited, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted).

Defendant argues Plaintiff Jones' unjust enrichment claim must be dismissed because the Pay-to-Pay fees are not "unjust." (Mot. to Dismiss, ECF No. 55-1 at 36). Defendant relies on two cases to support its argument: *Austin v. Lakeview Loan Servicing, LLC*, No. RDB-20-1296, 2020 WL 7256564, at * 3 (D. Md. Dec. 10, 2020), and *Baptista v. JP Morgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011). In *Baptista,* the court found plaintiff's unjust enrichment claim failed as a matter of law because the $6.00 fee defendant levied against her was "an additional benefit on Baptista, that is, immediate payment of the check" and because plaintiff could not "show that Chase failed to give consideration for her $6.00." 640 F.3d 1194, 1198 n.3. Applying the same rationale, the court in *Austin* found that the "Pay-to-Pay Fees [plaintiff challenged] were not paid without some benefit [(i.e., immediate cashing of her check)] exchanged in return" and thus plaintiff failed to state an actionable claim for unjust enrichment. Plaintiff Jones counters

Defendant's "few cases denying unjust enrichment actions" for cases where consumers have alternative options to submit their payments "are in the minority." (Pl. Opp., ECF No. 56 at 26). Yet, Plaintiff Jones provides little caselaw, and instead relies on her conclusory allegation that Defendant's "retention of the [Pay-to-Pay Fees] is unjust because [Defendant] had no right to collect the Pay-to-Pay Fees under the Standard Mortgage[ ] or applicable law." (Am. Compl., ECF No. 54 ¶ 178–79). This reasoning is circular and does not negate the undisputed fact that Plaintiff Jones received a convenient service (i.e., one-time EFT to pay her mortgage) in exchange for the benefit received by Defendant (i.e., the Pay-to-Pay Fees). Thus, Defendant's Motion to Dismiss Plaintiff Jones' unjust enrichment claim in Count V is granted, without prejudice. [6]

### ii.    Plaintiff Allard

To state a claim for unjust enrichment under Illinois law, "a complaint must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *A.P. Properties, Inc. v. Rattner*, 960 N.E.2d 618, 621 (Ill. App. 2011) (citing *HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989)). Unjust enrichment is not an independent cause of action. *Martis v. Grinnel Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009). Rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence." *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 976 (Ill. App. 1995) (internal quotation marks omitted).

---

[6]   Defendant also argues the unjust enrichment claim should be dismissed as Plaintiff cannot simultaneously pursue this claim with a breach of contract claim. (Mot. to Dismiss, ECF No. 55-1 at 36). However, since the Court is granting Defendant's Motion as to the breach of contract claim the Court need not address this argument. *Supra* Section (IV)(B).

Like with Plaintiff Jones, Defendant argues Plaintiff Allard's unjust enrichment claim should be dismissed because the Pay-to-Pay fees are not "unjust." (Mot. to Dismiss, ECF No. 55-1 at 36). Plaintiff Allard similarly relies on her allegation that Defendant's "retention of the [Pay-to-Pay Fees] is unjust because [Defendant] had no right to collect the Pay-to-Pay Fees under the Standard Mortgage[ ] or applicable law." (Am. Compl., ECF No. 54 ¶ 178–79). For the same reasons that the Court found that argument insufficient as to Plaintiff Jones, it does so with respect to Plaintiff Allard.

In sum, Plaintiffs Jones and Allard both fail to sufficiently state plausible unjust enrichment claims and Defendant's Motion to Dismiss Count V is granted without prejudice.

### G. Plaintiff Allard Sufficiently States a Claim Under the Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from engaging in "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). "Specifically, the FDCPA 'prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures.'" *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 653 (S.D.N.Y. 2006) (citing *Acosta v. Campbell*, No. 04-761, 2006 WL 146208, at *12 (M.D. Fla. Jan. 18, 2006)).

To state a claim for a violation under the Act, a plaintiff must allege that (1) defendant "qualifies as a 'debt collector' as defined in § 1692a(6), (2) the conduct of which she complains was taken 'in connection with the collection of any debt,' and (3) the conduct violated one of the FDCPA's substantive provisions." *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted).

Defendant argues that Plaintiff Allard's FDCPA claim should be dismissed as she failed to allege facts demonstrating that the Pay-to-Pay Fees were "'incidental' to the underlying debt." (Mot. to Dismiss, ECF No. 55-1, at 37). Defendant contends Plaintiff Allard's decision to use its optional payment system resulted in her entering a "'separate agreement, independent of her mortgage,'" and thus the "resulting 'convenience fee' is . . . *not* incidental to the principal obligation, and thus, not a violation of the FDCPA." (Mot. to Dismiss, ECF No. 55-1 at 38) (citing *Lish v. Amerihome Mortg. Co.*, *LLC*, No. 2:20-07147, 2020 WL 6688597, at *6 (C.D. Cal. Nov. 10, 2020) (emphasis in original)). Plaintiff Allard argues that Defendant misreads the statute which prohibits the collection of "any amount (including any interest, fee, charge or expense incidental to the principal obligation." (Pl. Opp., ECF No. 56 at 19). More importantly, Plaintiff Allard contends that "the vast majority of courts consider PHH's . . . Pay-to-Pay Fees . . . 'incidental.'" (Pl. Opp., ECF No. 56 at 19).

While Defendant's argument is not entirely meritless, the majority of courts have rejected it and instead hold that "a charge is 'incidental' to a debt within the meaning of § 16921 if it is incurred in connection with efforts to collect that debt . . ." *Fuentes v. AR Res., Inc.*, No 15-7988, 2017 WL 1197814 (D.N.J Mar. 31, 2017); *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 765 (7th Cir. 2016); *see also Longo v. Law Offs. of Gerald E. Moore & Assoc., P.C.*, No. 04-5759, 2005 WL 8153247, at *3 (N.D. Ill. Feb. 3, 2005) ("Under the plain language of the FDCPA . . . a debt collector may not collect *any* fee incidental to the claimed debt unless expressly authorized by the agreement creating the debt or permitted by law. The FDCPA does not specify whether that fee must be voluntary or involuntary.") (emphasis in original); *see also Wittman v. CB1, Inc.*, No. 15-105, 2016 WL 3093427, at *3 (D. Mont. June 1, 2016); *Lindblom v. Santander Consumer USA Inc.*, No. 15–990, 2016 WL 2841495, at *6–7 (E.D. Cal. May 9, 2016);

*Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136 (N.D. Cal 2020). The Court believes these cases are more persuasive than those cited by Defendant and more accurately reflect the majority rule. Thus, Defendant's Motion to Dismiss Plaintiff Allard's FDCPA claim in Count VI is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 55) is **GRANTED IN PART and DENIED IN PART**. An appropriate Order accompanies this Opinion.


**CHRISTINE P. O'HEARN**
**United States District Judge**