[ECF No. 99]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANNTWANETTE JONES et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE CORPORATION,<br><br>Defendant. | Civil No. 23-1040 (CPO/SAK) |

## OPINION AND ORDER

This matter is before the Court on the motion of Plaintiffs Anntwanette Jones and Lucinda Allard (collectively, "Plaintiffs") [ECF No. 99] for a protective order regarding Defendant PHH Mortgage Corporation ("PHH") and its solicitation of Note Amendments from putative class members. The Court received Plaintiffs' memorandum in support of the motion [ECF No. 97], PHH's opposition [ECF No. 110], and Plaintiffs' reply [ECF No. 111].[1] The Court exercises its discretion to decide the motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the following reasons, the Court **DENIES IN PART and GRANTS IN PART** Plaintiffs' motion.

I. BACKGROUND

Plaintiffs filed this class action against PHH alleging, *inter alia*, breach of contract, violations of New York and Illinois state consumer protection laws, and violations of the Fair Debt Collection Practices Act ("FDCPA") relating to fees PHH charges when borrowers use certain

---

[1] Additionally, the Court received PHH's notice of suggestion of mootness of Plaintiffs' motion [ECF No. 112], Plaintiffs' response [ECF No. 113], and PHH's notice of subsequent history [ECF No. 114].

methods to pay their mortgage bills. *See generally* Am. Compl. [ECF No. 54]. Plaintiffs bring their claims individually and, pursuant to Fed. R. Civ. P. 23, on behalf of several classes who paid these fees during the applicable statutes of limitations through the date a class is certified. *Id.* ¶¶ 92–97.

Plaintiffs filed the present motion pursuant to Fed. R. Civ. P. 23(d) seeking Court intervention in the communications between PHH and potential class members. *See* Pls.' Mem. at 3–6 [ECF No. 97]. Plaintiffs specifically target PHH's "Note Amendment" policy. *Id.* Note Amendments are sent to borrowers by PHH and "identif[y] the borrower, mortgaged property, and original debt." *Id.* at 3. Once signed, the Amendment allows an accountholder to be charged additional fees for making payments with a method of payment not expressly provided for in the original note creating the debt. Ex. A at 3 [ECF No. 97-2]. At the time of Plaintiffs' filing of the instant motion, PHH required borrowers to sign a Note Amendment consenting to additional fees in order for the borrower to make mortgage payments by way of website, phone, or an Interactive Voice Response system. *See* Pls.' Mem. at 3 [ECF No. 97]. PHH claims its Note Amendment policy arose after the publication of the Consumer Financial Protection Bureau's July 2017 Compliance Bulletin, which indicated that such additional fees are not permissible "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Def.'s Opp. at 4–5 [ECF No. 110]. The particular Note Amendment policy at issue was initiated by PHH's predecessor in 2018 and was recommenced by PHH in September of 2020. *Id.* at 5.

Central to Plaintiffs' requests is the language and context of PHH's communications with putative class members. The form letter that PHH sends to putative class members along with a Note Amendment first reads: "A SIGNED AMENDMENT TO THE ORIGINAL NOTE IS REQUIRED." Ex. A at 1 [ECF No. 97-2]. The next sentence reads that a "signed amendment to the original Note Document" is required "to process non-recurring payments over the phone or

online," and that "[a]ll signers of the original Note need to sign this document." *Id.* Further down the page, a line reads: "Other payment methods do not require this Amendment and are still available free of charge." *Id.* This form letter is provided to borrowers from whom PHH solicits a Note Amendment. Kipnis Decl., Ex. B at 10 [ECF No. 97-3].

Plaintiffs assert that Note Amendments "force borrowers (including putative class members) to permanently amend their mortgages in a way that . . . gives away borrowers' rights." Pls.' Mem. at 2 [ECF No. 97]. In particular, Plaintiffs allege that PHH solicits Note Amendments to circumvent PHH's obligations to the rights of borrowers under state law and the FDCPA. *Id.* at 2–3. Plaintiffs contend the Note Amendments are misleading, coercive, and threaten the fairness of litigation by contractually enabling PHH to collect the very fees at issue in this litigation. *Id.* at 8. Thus, Plaintiffs ask the Court to issue a protective order under its "broad authority" to control class action procedures. *Id.* at 6. Specifically, Plaintiffs seek an order enjoining PHH from further soliciting Note Amendments. *Id.* at 1–2. In the alternative, Plaintiffs seek an order requiring PHH to "provide corrective notice to putative class members any time PHH solicits a Note Amendment." Pls.' Reply at 13 [ECF No. 111].

PHH opposes the motion, arguing that Fed. R. Civ. P. 23(d) does not grant the Court authority to broadly restrict PHH's communications with potential class members. *See* Def.'s Opp. at 7–8 [ECF No. 110]. PHH claims that Rule 23 does not give the Court latitude to interfere with communications between parties and putative class members when made in the ordinary course of business, pointing out that its Note Amendment policy precedes this litigation. *Id.* at 8–9. Further, PHH argues that the Note Amendments are likely not solicited from putative class members, since PHH reasons that the amendments are typically sought prior to the charging of an additional fee and the putative classes are defined as borrowers who have already been charged such a fee. *Id.*

PHH clarifies that the Note Amendment contains no retroactive provisions and that PHH does not understand the amendment to waive any claim already in existence. *See* Def.'s Opp. at 9 [ECF No. 110]. Therefore, PHH concludes its communications are not coercive and misleading as borrowers are free to ignore the Note Amendments and proceed using the payment methods expressly authorized in their original mortgage agreement. *Id.* at 15–16.

In reply, Plaintiffs argue that whether PHH is acting in the ordinary course of business is immaterial to the issue of whether its Note Amendment policy is misleading or coercive. Pls.' Reply at 2 [ECF No. 111]. Plaintiffs focus much of their argument on maintaining that PHH's policy attempts to supersede the parties' original loan terms fees and violates the FDCPA by imposing additional fees not included in the original loan agreement. *See id.* at 1–6.[2] Thus, Plaintiffs assert that PHH is disingenuous in contending that the Note Amendment policy is an attempt to comply with the law. *Id.* at 2. Finally, Plaintiffs argue that their relief sought is the narrowest possible relief to protect putative class members. *Id.* at 13–14.

Lastly, PHH argues that Plaintiffs' motion is now moot because PHH changed its policy in July of 2025; PHH no longer charges the fees at issue nor does it solicit Note Amendments from borrowers. *See* Def.'s Notice [ECF No. 112]. Plaintiffs counter that their motion is not moot because PHH voluntarily chose to cancel its policy, it may revert to seeking Note Amendments at any point without repercussion, and PHH has not conceded its legal position on the validity of those Note Amendments already signed. *See* Pls.' Rep. to Notice of Mootness [ECF No. 113].

---

[2] Both parties make arguments relating to the underlying merits of Plaintiffs' complaint, specifically targeting the validity of imposing additional pay-to-pay fees via amendments not included in an original debt agreement. *See, e.g.*, Pls.' Mem. at 1, 9 [ECF No. 97]; *see also, e.g.*, Def.'s Opp. at 10–11 [EF No. 110]. In making a determination on Plaintiffs' motion for a protective order, this Court need not—nor will it—examine whether Note Amendments legally impair putative class members' rights to later participate in the present litigation.

## II. DISCUSSION

### A. Legal Standard

Under a court's authority to manage class actions pursuant to Fed. R. Civ. P. 23(d), a court "may issue orders" that "impose conditions on the representative parties" or "deal with similar procedural matters." *See* Fed. R. Civ. P. 23(d); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."). A court may limit communications with putative class members based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101. One such recognized need for a limitation is a court's "duty to 'safeguard class members from . . . misleading communications from the parties and their counsel.'" *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 541 F. App'x 181, 186 (3d Cir. 2013) (quoting in part *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 310 (3d Cir. 2005)); *see also In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) (citing *Gulf Oil Co.*, 452 U.S. at 101 n.12) ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally."). Particularly, courts have the authority to prevent misleading communications that would "undermine Rule 23 by encouraging class members not to join the suit." *In re Currency Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005).

While a court need not conclude that a communication caused actual harm to act under Rule 23(d), a protective order must be issued to "guard against the '*likelihood* of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d at 683 (emphasis in original) (quoting *Gulf Oil Co.*, 452 U.S.

at 104); *see also Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99-CV-4567, 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) ("[T]he record supports findings of potential coercion and potentially unknowing waivers of the rights asserted in this action."). Willful misconduct on the part of a party is not required for their communication to be misleading or coercive, "so long as the effect is to interfere with class members' rights." *In re Sch. Asbestos Litig.*, 842 F.2d at 682; *see also Jones v. Giant Eagle, Inc.*, No. 218-CV-282, 2020 WL 5642276, at *3 (W.D. Pa. Sept. 22, 2020) ("[T]he court is not so much concerned with [Defendant's] intent in utilizing the EBA form, but rather, what effect using this form had on [putative class members]."). Even upon a finding of a likelihood of misleading or coercive communications, orders limiting communications should be "carefully drawn" to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co.*, 452 U.S. at 102.

### B. Analysis

While the Court does not find PHH's Note Amendment policy to be clearly coercive, the Court concludes it is likely misleading for two primary reasons. First, by failing to include information about the pending litigation and borrowers' rights that are impacted by the Note Amendment, PHH's communications contain a material omission likely to mislead putative class members. *See Slamon v. Carrizo (Marcellus) LLC*, No. 3:16-CV-2187, 2018 WL 3615989 (M.D. Pa. July 27, 2018); *see also In re Sch. Asbestos Litig.*, 842 F.2d at 843 (recognizing the duty of courts to regulate "communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class" and "communications that seek or threaten to influence the choice of remedies"). Second, the group of putative class members who have signed or will sign the Note Amendments are likely to be misled as to their ability to

participate in the pending litigation. *See Jones v. Giant Eagle, Inc.*, No. 218-CV-282, 2020 WL 5642276 (W.D. Pa. Sept. 22, 2020).

While this Court finds PHH's communications are misleading and have a serious likelihood of threatening putative class members rights, the Court does not agree that the communications are clearly coercive, or, in other words, the communications "force[] borrowers . . . to give[] away borrowers' rights." *See* Pls.' Mem. at 6 [ECF No. 97].[3] PHH's communications meaningfully differ from communications limited by prior courts on the basis of coercion, such as communications that comment on the likelihood of success of class claims, threaten consequences for class participation, or otherwise seek to diminish class counsel in the eyes of putative class members. *See, e.g., In re Sch. Asbestos Litig.*, 842 F.2d 671, 682 n.23 (3d Cir. 1988). Most notably, class members here are free to decline to sign a Note Amendment and may continue paying their mortgage using the methods expressly outlined in their original agreement. *See* Def.'s Opp. at 15 [ECF No. 110]; *see also Bobryk v. Durand Glass Mfg. Co.*, No. 12-CV-5360, 2013 WL 5574504, at *8 (D.N.J. Oct. 9, 2013).

Despite the reality that PHH's Note Amendment policy is not overtly coercive, PHH misplaces its reliance on *Bobryk v. Durand Glass Manufacturing Company*[4] and *Keystone*

---

[3] Even in cases cited by PHH where the court did not make a finding of coercion, the court nonetheless ordered defendants to "notify potential class members of the pendency of the lawsuit before they agreed to the release" so that plaintiffs may "be given the necessary information and opportunity to choose." *Jenifer v. Delaware Solid Waste Auth.*, No. 98-270 MMS, 1999 WL 117762, at *7–8 (D. Del. Feb. 25, 1999). When a putative class member is engaging with Defendant's solicitation related to the instant litigation, "the putative class members should know the essence of the claim they would be giving up in response to the solicitation of [Defendant]." *Id.* at *7. In other words, even if the Court is to find that the Note Amendments do not function to "somehow overpower[] the free will or business judgment of the potential class members," courts may still order corrective notice to protect putative class members. *Id.* at *5.

[4] The communications at issue in *Bobryk* between defendants and putative class members began with a lengthy description of the ongoing litigation; the description informed putative class members that the plaintiff was making claims on behalf of a class, that the putative class member

*Tobacco Company v. U.S. Tobacco Company* to claim its communications are not otherwise misleading. *See* Def.'s Opp. at 14 [ECF No. 110].[5]

The present matter is meaningfully distinguished from *Keystone* and *Bobryk* in that, here, putative class members are provided no notice of the pending action or their rights at issue. There appears to be no aspect of the "entire Note Amendment infrastructure PHH has built," including "call center scripts, messages on PHH's online payment portal, and data PHH collects" that informs borrowers of the litigation or of the potential implications of signing a Note Amendment on borrowers' rights under state or federal law. Pls.' Mem. at 4–5 [ECF No. 97]. The court in *Keystone* did not find the communications improper because they "did not include any incorrect assertions of fact regarding the current class action or the terms of the settlement agreement," putative class members were "advised . . . to consult with their own lawyers before deciding to settle the case or sign the releases," and putative class members were provided a packet of information regarding the complaint. *Keystone Tobacco Co.*, 238 F. Supp. 2d at 156–57. In stark contrast, putative class members here receive no notice of the pending litigation, no notice of their

---

may be a class member pending certification, and that defense counsel intended to use the conversation with the putative class member to disprove the plaintiff's claims. *Id.* at *2, *5 (noting that "defense counsel's script provided the putative class members with a fair, objective and plain language explanation of plaintiffs' claims"). In fact, the *Bobryk* court distinguished such communications from communications more similar to those at issue here, where, on the contrary, "in order to protect those rights [it was] held that the 'putative members be informed of the existence of the lawsuit and the identity of the attorneys for the plaintiffs, as well as the fact that it is a class action, and that they may be part of the class.'" *Id.* at *9 (citing *Gutierrez v. Johnson & Johnson*, No. 01–5302, 2003 WL 2647787, at *6 (D.N.J. Apr. 3, 2003)).

[5] Defendant's reliance on the holding in *Keystone Tobacco Company* is similarly unavailing. *See* Def.'s Opp. at 17 [ECF No. 110]. The contested communications in *Keystone* differ markedly from PHH's communications regarding Note Amendments; the communications included a copy of the complaint, memorandum assessing the merits of the lawsuit and the settlement offer, as well as a proposed settlement agreement. *See generally Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154–56 (D.D.C. 2002).

rights at issue in the litigation, nor are they offered any settlement in exchange for potentially signing away their right to contest the legality of additional fees.

District court holdings beyond the parties' briefing reflect a concern for misleading communications similar to those at issue here. Communications with putative class members "contain[] a material omission" if they "ask[] putative class members to release potential claims against Defendants without disclosing the existence of the pending class action, let alone a description of Plaintiff's claims." *Slamon v. Carrizo (Marcellus) LLC*, No. 3:16-CV-2187, 2018 WL 3615989, at *3 (M.D. Pa. July 27, 2018). By virtue of this material omission, such communication is "patently misleading," as it "may induce putative class members into releasing claims without knowledge of the possibility of recovery through the current litigation; it also does not afford putative class members a meaningful chance to evaluate the claims and their likelihood of success with counsel." *Id.*

While PHH "urges the Court to consider the propriety of the [Note Amendment] in a vacuum," the "pertinent consideration is not whether the release would be enforceable under principles of contract law," but rather, "the Court must focus on the communication as a whole, including the circumstances of its conveyance, to properly evaluate its potential to mislead or coerce, as well as its potential impact on this litigation." *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, No. 19-MD-2921, 2020 WL 3977674, at *7 (D.N.J. July 14, 2020); *see generally* Def.'s Opp. at 13 n.4 [ECF No. 110] ("PHH does not contend that signing the note amendment removes any protections; it believes borrowers' rights under the FDCPA and analogous state statutes are vindicated by affording borrowers the opportunity to consider, *ex ante*, whether to have access to same-day payment services in exchange for a fee.").[6] Defendant claims

---

[6] Plaintiffs aptly describe the circumstances of the communications at issue, noting that "if

9

that those with whom it communicates with regarding Note Amendments "*typically* are not at that time even putative members of any class alleged here, because they have *typically* not yet been charged a convenience fee." ECF No. 110 at 2 (emphasis added). However, even Defendant's framing admits that there may be some individuals who receive a Note Amendment despite having already been charged an additional fee. Plaintiffs' concern that putative class members are already impacted by these communications is further substantiated in that Plaintiff Allard "paid a Pay-to-Pay fee and then received a Note Amendment from PHH." Pls' Reply at 11–12 [ECF No. 111].

The Court agrees with the Defendant in that putative class members have the right to sign a Note Amendment if they so choose. However, the Court cannot ignore that putative class members who are presented with a Note Amendment "are not provided with critical information necessary to make a meaningful choice." *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, No. 19-MD-2921, 2020 WL 3977674, at *8 (D.N.J. July 14, 2020). Like courts before it, this Court will "permit [parties] to choose to accept" the amendment and avoid litigation altogether, but "the Court's objective is to even the informational playing field, so to speak, so that all [putative class members] have the information and time necessary to make an educated, meaningful choice about their legal rights." *Id.*

In addition to its misleading material omissions, this Court raises concern as to the potential effects of this Note Amendment policy for putative class members who mistakenly believe that they may not participate in this action after signing a Note Amendment. This Court finds the

---

PHH is correct that the Note Amendment alters the deed of trust to expressly authorize Pay-to-Pay fees, then consumers who have signed Note Amendments have given up their rights: they have given up their right to seek relief for violation of the FDCPA and analogous state laws." Pls.' Reply at 13 [ECF No. 111]. Further, "[i]f PHH is wrong (as Plaintiffs contend), then that further supports the conclusion that PHH's Note Amendment and related communications are misleading and improper." *Id.*

circumstances here analogous to that of *Jones v. Giant Eagle, Incorporated*, No. 218-CV-282, 2020 WL 5642276 (W.D. Pa. Sept. 22, 2020). Looking to the effects of the communications in both *Jones* and the instant policy, the Court finds that PHH's policy "has great potential to confuse and mislead . . . and chill participation in the class/collective." *Id.* at *3. Those with the "mistaken belief that [they] waived [their] claims" by signing a Note Amendment, without notice of their rights under the FDCPA or of the pending litigation, may later be dissuaded from participating in the litigation. *Id.*; *see* Pls.' Brief at 8, 15 [ECF No. 97]; *see also* Pls' Reply at 11 [ECF No. 111].[7]

The Court distinguishes Defendant's communication here from cases in which courts have found little likelihood of abuse. *See Lester v. Percudani*, No. 31-CV-1182, 2002 WL 1460763 (M.D. Pa. Apr. 18, 2002). Critically, in instances where there was little likelihood of abuse, there was "no indication … that [the defendant] require[d] anything from the borrowers in exchange for their participation in the plan." *Id.* at *4. In this instance, PHH maintains that it believes the Note Amendments form a type of contractual consent to the convenience fees at the heart of this litigation. *See* Def.'s Opp. at 11 [ECF No. 110]; *see also Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1293–94 (11th Cir. 2025) ("Nothing in the FDCPA prevents [Defendant] from extending this payment option to consumers if the agreement creating the debt provides customers

---

[7] The mere fact that PHH solicited Note Amendments before the instant litigation began is not controlling in 23(d) deliberations. Def.'s Opp. at 11–12 [ECF No. 110]; *Jones v. Giant Eagle, Inc.*, No. 218-CV-282, 2020 WL 5642276, at *3 (W.D. Pa. Sept. 22, 2020) ("[T]he court is not so much concerned with [Defendant's] intent in utilizing the EEA form, but rather, what effect using this form had on [putative class members]."). Instead, the Court's analysis is guided by the effect on putative class members in misleading them or otherwise impairing the fairness of the litigation process. *See In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, No. 19-MD-2921, 2020 WL 3977674, at *8 (D.N.J. July 14, 2020) (rejecting defendant's argument that "the program's longevity insulates it from scrutiny" and instead finding the program "'impermissibly threatens to influence putative class members' choice of remedies" because it "require[d] [putative class members] to give up any potential recovery in this case, even if those [putative class members] have no idea that this case exists").

11

fair warning of costs they may have to bear. . . . But in the absence of express authorization in the agreement creating the debt, we find that Speedpay fees are not implicitly authorized."). The Note Amendments require borrowers to potentially, *per* PHH's own framing, give up their rights under the FDCPA and jeopardize their ability to participate in the pending litigation. Pls.' Reply at 13 [ECF No. 111]. As opposed to *Lester*, where parties could elect to take advantage of a loan modification while continuing their participation in the litigation, PHH makes clear that it believes the Note Amendments are a "compliance" measure to FDCPA regulation and would therefore jeopardize an individual's ability to participate in the pending litigation. *Lester v. Percudani*, No. 31-CV-1182, 2002 WL 1460763 at *4 (M.D. Pa. Apr. 18, 2002); *see, e.g.*, Def.'s Opp. at 4–5 [ECF No. 110].[8] For the aforementioned reasons, the Court concurs with Plaintiffs' concern that, because of these communications, "putative class members will unknowingly waive litigation rights of which they are unaware, which PHH has deliberately elected to omit from the Note Amendment and related communications." Pls.' Reply at 10–11 [ECF No. 111].

The Court rejects PHH's claim of mootness. *See* Def.'s Notice [ECF No. 112]. Defendant failed to produce any caselaw supporting its claim that the protective order motion is now moot. *Id.* Plaintiffs provided cases suggestive of the opposite, where in analogous instances injunctions remained to protect class members' legal rights. *See* Pls.' Reply to Notice [ECF No. 113]. Further,

---

[8] PHH's descriptions of the communications as a mere compliance measure in the ordinary course of business communications does not insulate the communications from scrutiny. Def.'s Opp. at 7–9 [ECF No. 110]; *see O'Connor v. Uber Techs., Inc.*, No. C-13-3826, 2013 WL 6407583, at *4 (N.D. Cal. 2013) (distinguishing cases involving purely business communications completely unrelated to litigation with no substantial effect on class members rights); *see also Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) (allowing "regular sorts of business communications" that "do not purport to extinguish the rights of the class members in this litigation."). The Note Amendments at issue here are an attempt at complying with federal law protecting the rights of consumers and therefore directly impact the rights at issue in this litigation. *See* Def.'s Opp. at 4–5 [ECF No. 110]; *see also* Pls.' Reply at 13 [ECF No. 111].

PHH maintains that the Note Amendments that have already been signed are valid, unlike other cases where similar amendments were rescinded and made moot. *See* Def.'s Opp. at 4–5, 7–9 [ECF No. 110]; *see c.f.*, *Slamon v. Carrizo (Marcellus) LLC*, No. 316-CV-2187, 2018 WL 3615989, at *4 (M.D. Pa. July 27, 2018) ("This request is rendered moot by the fact that [Defendant] has agreed to rescind all agreements executed by putative class members thus far, and to grant each such individual the opportunity to make a new election to accept the settlement offer."). Therefore, the Court is not persuaded by Defendant's claim that Plaintiffs' motion is rendered moot by Defendant's voluntary change in policy.

Having found the Note Amendment policy bears a serious likelihood of misleading putative class members regarding their rights, and having found that Plaintiffs' motion is not moot, the Court must consider what remedy would adequately protect the rights of putative class members. As noted above, the Court recognizes borrowers' right to freely contract. Therefore, the Court finds that Plaintiffs' request to broadly restrict the use of Note Amendments may ultimately impair borrowers' rights before the resolution of Plaintiffs' underlying claims.

Plaintiffs alternatively request that PHH be "required to provide potential class members from whom it solicits Note Amendments with specific and adequate notice regarding this litigation and the potential implication for their legal rights." Pls.' Brief at 1–2 [ECF No. 97]. This requested notice ought to "inform the borrower about this litigation and [inform] them that executing a Note Amendment could have potential (not-yet-litigated) effects on class members' rights" under federal and state law. Pls.' Reply at 13 [ECF No. 111]. In similar instances of communications regarding the rights of putative class members in pending litigation, courts have required parties to issue corrective notice. *See, e.g.*, *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.*, 102 F.3d 869, 870–71 (7th Cir. 1996) (relaying district court action to cure precertification miscommunication

and requiring prior notice to prevent future miscommunications); *see also e.g.*, *Ralph Oldsmobile*, 2001 WL 1035132, at *7 (describing corrective notice sent to members of the proposed class at the expense of defendant).

In this instance, it would not be unduly burdensome for PHH to provide notice to all borrowers who have been sent a Note Amendment, as PHH already maintains records of such borrowers. *See* Deposition of Sherri Goodman at 4 [ECF No. 97-3]. The Court disagrees with Defendant that it is "difficult to discern how the relief sought will address any legitimate concern." Def.'s Opp. at 3 [ECF No. 110]. The concern addressed by this Court's order is that with regard to borrowers who, without being notified of their rights under state and federal law and without awareness of the pending litigation, have signed or will sign a Note Amendment; those putative class members may likely later believe that, by signing a Note Amendment, they have forfeited their ability to participate in the present litigation.

Future decisions of this Court may refuse to enforce the Note Amendments already signed by borrowers, however, that matter is not presently before the Court. *See, e.g., Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908, 2021 WL 3486894, at *6 (D.N.J. Aug. 9, 2021) ("In cases like this—where defendants have successfully solicited putative class members to enter agreements during litigation that might frustrate the ability to participate in class litigation but did not notify the class members that they might forfeit class litigation rights—courts have refused to enforce the contract provisions that would exclude the putative class members from the class."); *see also, e.g., Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 378 (4th Cir. 2022) ("To allow debt collectors to subsequently modify the terms of the original agreement as they see fit, based solely on the mere absence of legal prohibition, would thus frustrate the FDCPA's goals."); *see also, e.g., Knapp v. PHH Mortg. Corp.*, No. 324-CV-1990, 2025 WL 1174947, at *5–6 (D. Or. Apr. 18,

2025) (finding that similar amendments do not function to insulate lenders from Section 1692(f) of the FDCPA). In light of Defendant's indication that it no longer solicits Note Amendments and that it no longer requires additional fees to process certain payments, the Court's order seeks to remedy both any future solicitations of Note Amendments, if PHH alters its policy, and past solicitations impacting putative class members.

### III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **1st** day of **October, 2025**, that Plaintiffs' motion for a protective order [ECF No. 99] is **DENIED IN PART and GRANTED IN PART**.

1. To the extent Plaintiffs seek a court order enjoining PHH from further soliciting Note Amendments from putative class members, the request is **DENIED**; to the extent Plaintiffs seek a court order requiring PHH to issue corrective notice regarding Note Amendments, the request is **GRANTED**.

2. The parties are **ORDERED** to jointly draft a corrective notice to be issued to all putative class members from whom PHH has or will solicit a Note Amendment from during the pendency of this litigation. The corrective notice is to inform the recipient of this pending litigation, notify the recipient that their rights under federal and state law may be impacted by the Note Amendment, and provide the contact information for both Plaintiffs' and Defendant's counsel. The parties are to confer with one another and offer the Court their proposed notice in the form of a joint letter to the Court no later than **November 10, 2025.**

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.